# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ZIMMER SPINE, INC.,

      Plaintiff,

vs.

EBI, LLC (d/b/a Biomet Spine, Biomet Trauma, Biomet Bracing,
and Biomet Osteobiologics), and
ADAM VERI,

      Defendant(s).

_____

# COMPLAINT
_____

      For its complaint against defendants EBI, LLC, d/b/a Biomet Spine, Biomet Trauma,

Biomet Bracing and Biomet Osteobiologics ("Biomet Spine"), and Adam Veri, plaintiff Zimmer

Spine, Inc. ("Zimmer Spine") states as follows:

      1.      This case involves the actions of defendants Biomet Spine and Adam Veri that

tortiously interfered with – and induced a Zimmer Spine sales representative to violate –

contractual obligations owed to Zimmer Spine in an attempt to steal Zimmer Spine's sales,

customer relationships, and goodwill.  Biomet Spine and Veri together orchestrated the wrongful

termination and breach of Zimmer Spine's Sales Representative Agreement with Pro Medical,

LLC ("Pro Medical") and its owner, Frank Wainright, so they could employ Pro Medical's

Zimmer Spine sales personnel to compete directly against Zimmer Spine.

## THE PARTIES

2.      Plaintiff Zimmer Spine is incorporated under the laws of Delaware, with its principal place of business in Minneapolis, Minnesota.

3.      Zimmer Spine develops, manufactures, and sells spine care implants, devices and related medical products, instruments, and supplies, and provides related services, for the treatment and care of patients who suffer back pain, neck pain, degenerative disk conditions, and injuries due to trauma.

4.      Zimmer Spine generally does not employ direct sales representatives but rather contracts with independent distributors, called "Sales Representatives." These Sales Representatives, in turn, employ or contract with sales personnel to promote Zimmer Spine's products to, and solicit orders from, physicians and hospitals, and to provide support services to those physicians when they use Zimmer Spine's products.

5.      Defendant Biomet Spine is an Indiana limited liability company, with its principal place of business in Parsippany, New Jersey. Biomet Spine's sole member is Biomet, Inc., an Indiana corporation with its principal place of business in Warsaw, Indiana.

6.      Biomet Spine is a significant direct competitor of Zimmer Spine. Biomet Spine competes directly against Zimmer Spine for both customer sales and Sales Representatives and other sales personnel who can provide the highest quality service to customers to enhance and maximize those sales.

7.      Adam Veri ("Veri") is a Colorado citizen. Veri was, until recent events, the Zimmer Spine sales manager at Pro Medical.

## RELEVANT NON-PARTIES

8. Pro Medical is a Colorado limited liability company, with its principal place of business in Greenwood Village, Colorado.  Pro Medical was Zimmer Spine's Sales Representative in some or all of Colorado, Montana, Nevada, Utah, and Wyoming.

9. Frank W. Wainright is a citizen of Colorado and the 100% owner of Pro Medical.

10. GIO Medical, LLC ("GIO Medical") is a Colorado limited liability company, with its principal place of business in Centennial, Colorado.  Veri formed GIO Medical on September 13, 2010 and acts as its principal.

## VENUE AND JURISDICTION

11. Venue is proper in this district under 28 U.S.C. § 1391(2) because a substantial part of the events and omissions giving rise to the claims stated herein occurred within this judicial district.

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because plaintiff Zimmer Spine is a citizen of a different state than defendants Biomet Spine and Veri and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Biomet Spine because it regularly transacts business in this state, regularly contracts to supply goods in this state, and caused tortious injury by an act in this state.  This Court has personal jurisdiction over Adam Veri because he resides in and is a citizen of this state and caused tortious injury by an act in this state.

## GENERAL BACKGROUND

### A.   Zimmer Spine's Relationship With Pro Medical and Frank Wainright

14.     Effective January 1, 2009, Pro Medical contracted to serve as the Sales Representative of Zimmer Spine in Colorado, Montana, and Wyoming.  (Sales Representative Agreement ("Agreement") at p. 1 (first paragraph, defining "Effective Date"), § 2 & Exhibit A (defining "Territory").)[1]  Over time, Pro Medical's territory expanded to include some or all of Colorado, Montana, Nevada, Utah, and Wyoming.

15.     The Agreement between Zimmer Spine and Pro Medical had a three year initial term, expiring on January 1, 2012.  (*Id.* at p. 1 (first paragraph), § 5.)

16.     The Agreement defined Pro Medical as the "Representative," and provided that, "[i]f Representative is a business entity," then it must identify "all persons holding a direct or indirect, legal or beneficial Ownership Interest . . . in Representative (each an 'Owner') . . . ."  (*Id.* § 2.)  The Agreement also provides that "[e]ach Owner shall cause Representative to perform its duties and obligations hereunder."  (*Id.*)

17.     Pro Medical identified Frank Wainright as its sole Owner.  (*Id.*, Exhibit B.)

18.     Wainright signed the Agreement twice.  He signed it once on behalf of Pro Medical.  (*Id.* at p. 26.)  He signed it a second time in his individual capacity, in which he "join[ed] this Agreement . . . as to those provisions of this Agreement that require any performance hereof by an Owner."  (*Id.*)  In this latter status, he bound himself individually to the Agreement both as to the provisions that impose specific obligations directly upon the

---

[1] Zimmer Spine is not attaching a copy of the Agreement or its exhibits because certain provisions of those documents contain confidential, competitively-sensitive information.

"Owner" (such as Sections 24, 25, and 26) and as to the provision in Section Two that requires him to cause Pro Medical to perform all of its duties and obligations under the Agreement.

19.     Because Zimmer Spine entrusts its Sales Representatives like Pro Medical with protecting and enhancing its reputation and goodwill with customers and potential customers, and with a wealth of competitively sensitive, confidential information – and because Pro Medical reaps a handsome profit trading on Zimmer Spine's research and development efforts, reputation and goodwill, and confidential information – Zimmer Spine, Pro Medical, and Wainright agreed that Pro Medical and Wainright would perform certain obligations during the term of the Agreement and following any termination of the Agreement.

20.     In Section 10, Pro Medical and Wainright "agree[d] to maintain at all times a full complement of trained employees, agents, and sales associates ('Personnel') sufficient to enable [Pro Medical] to fulfill its responsibilities in the Territory for all [Zimmer Spine products it carried] in compliance with [Zimmer Spine]'s requirements."  Pro Medical and Wainright also agreed in Section 10 to "take all necessary steps to attract and retain qualified, skilled and competent Personnel . . . ."

21.     In Section 24, Pro Medical and Wainright promised that they would not reveal any "Confidential Information," including without limitation:

A.     Marketing, sales, and advertising information, including list of customers or potential customers; customer preference data; marketing and sales techniques, strategies, efforts, and data; business plans; strategies utilized, and the success or lack of success of those strategies;

B.     Organizational information including:  personnel and salary data;

C.     Financial information such as:  product costs; supplier information; profit margins; and pricing policies; and

D.     Technical information including:  product specifications; improvements; discoveries; developments; designs, inventions; techniques; and new products.  (Agreement §24.)

22.     These confidentiality obligations existed not only during the term of the Agreement, but also during the "Restricted Period," which is (a) five years from the expiration or termination of the Agreement for Confidential Information that is not a "trade secret" under Minnesota law, and (b) indefinitely for Confidential Information that is a "trade secret" under Minnesota law.  (*Id.*)

23.     In Section 25, Pro Medical and Wainright promised that, during the term of the Agreement, they would not, "directly or indirectly, through any other person or entity, on [their] own account, or as an employee, independent contractor, agent, sales representative, consultant, partner, owner, officer, director or stockholder of any other person, partnership, corporation or entity:

> (1) have any interest in (other than an ownership interest of 1% or less in a publicly traded corporation) or provide services for any business other than [Zimmer Spine], wherever located or operating, that manufactures, distributes, markets, sells or promotes spinal or orthopedic implants, devices, instruments or related medical products; or
>
> (2) solicit, attempt to solicit or engage in discussions or other communications with any party with the purpose or intent of promoting, selling or obtaining orders for any spinal or orthopedic implants, devices, instruments or related medical products other than soliciting orders and servicing accounts for purchase of the [Zimmer Spine] Products in accordance with the terms and conditions of this Agreement."

24.     In Section 26, Pro Medical and Wainright promised that, "[f]or a period of eighteen (18) months, beginning on the later of the termination or expiration of this Agreement for any reason or the date on which [Pro Medical] begins to comply with this Section 26, [Pro Medical] and [Wainright] shall not, without the prior written consent of [Zimmer Spine], either directly or indirectly, on [their own] behalf, or on behalf of any person, firm, corporation or other business or legal entity (other than on behalf of [Zimmer Spine] in accordance with the terms and conditions of a successor agreement with [Zimmer Spine]):

> 1.      Solicit, attempt to solicit or engage in discussions or other communications with (regardless of who initiates such discussions or communications) any Restricted Customer (defined below) with the purpose or intent of promoting, selling or obtaining orders for any products which are the same or serve a similar purpose as the [Zimmer Spine] Products, including without limitation any spinal or orthopedic implants, devices, products, instruments, services or supplies sold, marketed or promoted by [Pro Medical] or the Business during the twenty four (24) months preceding the termination of the Agreement.
>
> 2.      Have any interest in or provide services for any Competitive Business located, operating or offering or selling products within the Territory."

(Agreement § 26. A.)  "Restricted Customer" is defined as any person or entity who, during any part of the twelve months immediately preceding termination of the Agreement, (1) (a) was an actual customer of Zimmer Spine or an affiliate, (b) participated in or influenced the purchasing decision of any actual customer of Zimmer Spine or an affiliate, or (c) used or implanted the Zimmer Spine Products purchased by an actual customer of Zimmer Spine or an affiliate; and (2) was solicited or serviced directly or indirectly by Pro Medical, the Business, or Pro Medical's Personnel.  (*Id.* § 26. B.)  "Competitive Business" is defined as "a business offering or selling products that are competitive with any of the Products or any other products that [Pro Medical]

was promoting, marketing or soliciting orders for on behalf of [Zimmer Spine] or its affiliates at any time during the twenty four (24) months preceding the termination of this Agreement." (*Id.* § 26. A. 2.)

25.     In Section 10, the Agreement required Pro Medical to cause each of its sales personnel to execute covenants against disclosure of confidential information, competition against Zimmer Spine, and solicitation of customers that conferred express, independently enforceable third-party beneficiary rights upon Zimmer Spine.  Section 32 also requires Pro Medical to enforce its restrictive covenants against its sales personnel for the benefit of Zimmer Spine upon termination of that Agreement.

26.     Pro Medical's Agreement contains express terms for termination of that Agreement, with and without cause.

27.     The Agreement permits either party to terminate "without cause upon ninety (90) days written notice to the other party, at any time effective upon expiration of the Initial Term or any renewal term." (*Id.* § 28. A.)  Because the Initial Term did not expire until January 1, 2012 (*id.* § 5), Pro Medical could not make a "without cause" termination effective until after then.

28.     The Agreement also contains bilateral "for cause" termination provisions.  (*Id.* §§ 28. B., 28. C.)

29.     Pro Medical is permitted to terminate the Agreement for cause "immediately upon notice in the event of (a) the insolvency of [Zimmer Spine], (b) the filing of a petition in bankruptcy by or against [Zimmer Spine], (c) the appointment of a receiver for [Zimmer Spine], or (d) execution of an assignment by [Zimmer Spine] for the benefit of creditors." (*Id.* § 28. C.)

- 8 -

30.     If Zimmer Spine "is in breach of any of its material obligations under this Agreement," then Pro Medical may terminate the Agreement for cause "effective sixty (60) days after the delivery of written notice of termination" to Zimmer Spine, but only if Zimmer Spine "does not:  (1) correct such breach within thirty (30) days after delivery of notice of such breach; or (2) if such breach cannot reasonably be cured within thirty (30) days after delivery of notice of such breach, undertake within thirty (30) days after delivery of such notice, and continue until completion, reasonable efforts to cure such breach."  (*Id.*)

31.     Because Zimmer Spine entrusted significant sales and customer service responsibilities to Pro Medical,  Zimmer Spine required that Pro Medical take affirmative steps to help transition those responsibilities to Zimmer Spine (or its designee) in the event the Agreement were terminated.

32.     In the Agreement, Pro Medical promised that, "[u]pon termination or expiration of this Agreement, and thereafter as necessary in the circumstances," it would "take all such actions and sign all such documents as are necessary to facilitate the transition of [Pro Medical]'s business for [Zimmer Spine] under this Agreement ([Pro Medical]'s 'Zimmer Business') to [Zimmer Spine] or its designee."  (*Id.* § 32.)

### B.     Biomet Spine's Orchestrated Scheme With Pro Medical, Wainright and Veri

33.     Biomet Spine and Veri undertook a calculated scheme to interfere with Zimmer Spine's Agreement, to deprive Zimmer Spine of the benefits of the unique skills and abilities it had contracted for, and to steal the business, customer relationships, and goodwill that Zimmer Spine has built through Pro Medical and Wainright.

34.   Biomet Spine aggressively solicited Pro Medical and Wainright to breach their Agreement with Zimmer Spine and worked hand-in-hand with Pro Medical, Wainright, and Veri to wrongfully solicit Pro Medical personnel to sign employment agreements with Biomet Spine, convert their Zimmer Spine business into Biomet Spine business, and compete directly against Zimmer Spine.

35.   Biomet Spine and Veri acted with knowledge of Zimmer Spine's rights and Pro Medical's and Wainright's obligations under the Agreement.

36.   Biomet Spine and Veri acted with malice and an intent to harm Zimmer Spine by, among other things, purposefully seeking to interfere with Zimmer Spine's rights under the Sales Representative Agreement, to deprive Zimmer Spine of the benefits it had contracted for, and to steal the business, customer relationships, and goodwill that Zimmer Spine had developed through Pro Medical and Wainright.

37.   Biomet Spine and Veri succeeded in inducing Pro Medical and Wainright to breach the Sales Representative Agreement with Zimmer Spine.

38.    In the fall of 2010, Veri – in concert with Biomet Spine, Pro Medical and Wainright – began soliciting Pro Medical sales personnel who were representing Zimmer Spine products to their customers to switch to working for Biomet Spine.

39.   Veri, a Pro Medical sales manager, asked the Pro Medical sales personnel what business they thought they could steal away from Zimmer Spine and bring with them to Biomet Spine.

40.     Veri also asked the Pro Medical sales personnel how much money Biomet Spine would have to pay them to go to work for Biomet Spine and to try to bring their Zimmer Spine customers with them.

41.     In an effort to conceal this scheme to steal Zimmer Spine's business, customer relationships, and goodwill, Veri tried to force the Pro Medical sales personnel to sign nondisclosure agreements regarding the discussions of a potential move to Biomet Spine.

42.     Meanwhile, on September 13, 2010, Veri formed GIO Medical.

43.     GIO Medical and Veri would become Biomet Spine's distributor in Pro Medical's territory (at least until the expiration of Pro Medical's and Wainright's non-competition agreements with Zimmer Spine).

44.     On or about November 18, 2010, Biomet Spine and Veri's plan hit high gear when Frank Wainright called an "emergency" meeting of Pro Medical's Zimmer Spine sales representatives at the Inverness Hotel and Conference Center.

45.     At that meeting, Wainright announced that he was terminating his relationship with Zimmer Spine.  This announcement came as a surprise to everyone except Biomet Spine and Veri.

46.     Wainright faxed a letter to Zimmer Spine claiming to terminate the Agreement.  A copy of this letter is attached as Exhibit 1.

47.     In that letter, Wainright asserted that his termination was "for cause due to the failure of Zimmer to develop, manufacture and sell Products of merchantable quality . . . ."

48.     This purported concern about product quality is not one of the four specified events in Section 28. C. that permit an immediate "for cause" termination by Pro Medical. Indeed, none of those specified events has ever occurred.

49.     Under Section 28. C., Pro Medical is otherwise permitted to terminate the Agreement "for cause" only upon a material breach by Zimmer Spine, which termination becomes effective sixty (60) days after delivery of written notice, but only if, within thirty (30) days of that notice, Zimmer Spine does not cure, or begin to cure, the alleged breach.

50.     Because Pro Medical's purported November 18, 2010 immediate "for cause" termination does not comply with any provision in Section 28. C., it is wrongful.

51.     Wainright's letter also claims that "[a]lternatively, [Pro Medical] also hereby terminates the Agreement without cause effective February 17, 2011 . . . ."

52.     Under Section 28. A., however, any termination "without cause" is not effective without "ninety (90) days written notice," and then only "upon expiration of the Initial Term or any renewal term," which will not occur until January 1, 2012.

53.     Because Pro Medical's purported alternative November 18, 2010 "without cause" termination does not comply with any provision in Section 28. A., it is wrongful.

54.     While Pro Medical and Wainright were wrongfully terminating their Agreement with Zimmer Spine, Veri and Biomet Spine set their sights on the Pro Medical sales personnel and customers.

55.     In an obviously well orchestrated and coordinated move, Wainright's announcement at the Inverness Hotel meeting was immediately followed by a speech by Veri

- 12 -

supporting Biomet Spine and the appearance of approximately thirteen representatives from Biomet Spine.

56.     Biomet Spine and Veri then gave an approximately hour-long power point presentation about Biomet Spine to the Pro Medical sales personnel and took them to another conference room at the hotel for a Biomet Spine "product fair," which featured Biomet Spine product managers and technicians displaying and talking about their products.

57.     Each of Pro Medical's Zimmer Spine sales personnel was then ushered into a private meeting room and confronted individually by the Senior Vice President of Sales for Biomet Spine (Mark Valentine), Veri, and another individual (a consultant who worked for Wainright and Veri).

58.     During these individual meetings, Veri offered the Pro Medical Zimmer Spine sales personnel employment contracts with GIO Medical to sell Biomet Spine products, including to their Zimmer Spine customers.

59.     These employment offers included increased commission rates and an up-front signing bonus.

C.      **Zimmer Spine Intervenes**

60.     Having received Wainright's faxed letter and catching wind of Biomet Spine's attack on Zimmer Spine's Sales Representative, Pro Medical, and its sales personnel, Zimmer Spine sprung into action to try to minimize the damage caused (and being caused) by Biomet Spine's scheme.

61.     Zimmer Spine representatives flew to Colorado to meet with the Pro Medical sales personnel and offered these sales personnel continued employment with Zimmer Spine.

62.    Zimmer Spine has taken additional and costly steps to attempt to preserve its relationships with the Pro Medical sales personnel and the Zimmer Spine customers – the personnel and customers targeted by Biomet Spine.

63.    Although Zimmer Spine has succeeded in signing many of the Pro Medical sales personnel to employment contracts with Zimmer Spine, it has done so at tremendous cost and after incurring significant damages.

### D.    Biomet Spine And Veri Continue Their Assault On Zimmer Spine

64.    Biomet Spine has made a significant investment in its assault on Zimmer Spine and it is not walking away from that investment; rather, Biomet Spine and Veri continue to press the Zimmer Spine sales personnel and customers.

65.    After Zimmer Spine tried to steady the situation, Biomet Spine and Veri have repeatedly gone back to the Pro Medical sales personnel and steadily increased their employment offers.

66.    Biomet Spine and Veri have offered larger signing bonuses, higher guaranteed commission rates, more sales incentives, less restrictive covenants and indemnification against any claims brought by Pro Medical or Zimmer Spine.

67.    Biomet Spine and Veri acted – and continue to act – with knowledge of Zimmer Spine's rights and Pro Medical's and Wainright's obligations under the Agreement and the sales personnel's obligations under their Zimmer Spine contracts.

68.    Biomet Spine and Veri acted – and continue to act – with malice and an intent to harm Zimmer Spine.

E.     **Pro Medical's And Wainright's Induced Breaches**

69.     Biomet Spine and Veri induced Pro Medical and Wainright to breach several provisions of their Agreement with Zimmer Spine, all of which appear to have been part of their scheme to try to steal Zimmer Spine's customer relationships and sales and abscond with them to Biomet Spine.

70.     Biomet Spine and Veri induced Pro Medical to breach its "Staffing" obligations under Section 10 by failing to take, and Wainright by failing to cause it to take, "all necessary steps to attract and retain qualified, skilled and competent Personnel," including but not limited to by providing personnel and salary data to Biomet Spine and orchestrating a meeting between Pro Medical's Zimmer Spine Personnel, on the one hand, and Biomet Spine and Veri, on the other hand, to help Biomet Spine hire those Personnel to compete directly against Zimmer Spine.

71.     Biomet Spine and Veri induced Pro Medical and Wainright to breach their "Confidentiality" obligations under Section 24, including but not limited to by providing "personnel and salary data" to Biomet Spine, as indicated by the fact that Biomet Spine was able to present on-the-spot employment offers, including increased commission rates and signing bonuses, to Pro Medical's Zimmer Spine Personnel on November 18.

72.     Biomet Spine and Veri induced Pro Medical and Wainright to breach their "Exclusive Relationship" obligations under Section 25, including but not limited to by, directly or indirectly, engaging in discussions with Biomet Spine for the purpose and intent of promoting, selling, and obtaining orders for spinal and/or orthopedic implants, devices, instruments and/or related medical products.

73.     Biomet Spine and Veri induced Pro Medical and Wainright to breach their Agreement with Zimmer Spine by wrongfully terminating it.

74.     Biomet Spine and Veri induced Pro Medical and Wainright to breach their "Non-Competition" obligations under Section 26, including but not limited to by, directly or indirectly, providing services to Biomet Spine.

75.      Biomet Spine and Veri induced Pro Medical and Wainright to breach the implied covenant of good faith and fair dealing in their Agreement with Zimmer Spine.

## COUNT I—INTENTIONAL INDUCEMENT TO BREACH A CONTRACT

76.     Zimmer Spine incorporates the allegations in paragraphs 1-75 as if fully restated here.

77.     Zimmer Spine entered into a valid Agreement with Pro Medical and Wainright.

78.     Biomet Spine and Veri knew that this Agreement existed and knew its terms.

79.     Biomet Spine and Veri maliciously and willfully engaged in a series of acts with the intent of inducing Pro Medical and Wainright to breach their obligations under the Agreement.

80.     Because of Biomet Spine's and Veri's wrongful inducements, Pro Medical and Wainright have breached their obligations under the Sales Representative Agreement.

81.     As a direct and proximate result of Biomet Spine's and Veri's wrongful conduct, Zimmer Spine has been harmed and faces additional harm.

## COUNT II—INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

82.     Zimmer Spine incorporates the allegations in paragraphs 1-81 as if fully restated here.

83.     Zimmer Spine had a business relationship, prospective contractual relationship, independently enforceable third-party beneficiary rights, or prospective independently enforceable third-party beneficiary rights with certain of Pro Medical personnel.

84.     Biomet Spine and Veri knew of the existence and the terms of these relationships, prospective relationships, rights or prospective rights.

85.     Biomet Spine and Veri maliciously and willfully engaged in a series of acts with the intent of inducing the Pro Medical personnel to terminate their relationships or prospective relationships with Zimmer Spine or to violate the third-party beneficiary rights or prospective third-party beneficiary rights of Zimmer Spine.

86.     The predominant purpose of Biomet Spine's and Veri's actions was to injure Zimmer Spine.

87.     Biomet Spine and Veri employed improper means to induce the sales representatives to terminate their relationships or prospective relationships with Zimmer Spine or to violate the third-party beneficiary rights or prospective third-party beneficiary rights of Zimmer Spine.

88.     Because of Biomet Spine's and Veri's wrongful inducements, Pro Medical personnel have purported to terminate their relationships or prospective relationships with Zimmer Spine or to violate the third-party beneficiary rights or prospective third-party beneficiary rights of Zimmer Spine.

89.     As a direct and proximate result of Biomet Spine's and Veri's conduct, Zimmer Spine has been harmed and faces additional harm.

## COUNT III—CIVIL CONSPIRACY

90.     Zimmer Spine incorporates the allegations in paragraphs 1-89 as if fully restated here.

91.     Biomet Spine and Veri conspired together and with Pro Medical, Wainright, and GIO Medical to develop and implement a malicious scheme to injure Zimmer Spine.

92.     This scheme was for an unlawful purpose and used unlawful means, including Pro Medical's and Wainright's wrongful termination and breach of the Agreement and the inducement and solicitation, with Biomet Spine and Veri, to tortiously coerce and induce Pro Medical personnel to terminate their relationships or prospective relationships with Zimmer Spine or to violate the third-party beneficiary rights or prospective third-party beneficiary rights of Zimmer Spine.

93.     Biomet Spine, Veri, Pro Medical, Wainright, and GIO took several overt actions in furtherance of this conspiracy, including, but not limited to, orchestrating a meeting with Pro Medical personnel to pressure them to terminate their relationships or prospective relationships with Zimmer Spine or to violate the third-party beneficiary rights or prospective third-party beneficiary rights of Zimmer Spine.

94.     As a direct and proximate result of Biomet Spine's and Veri's conduct, Zimmer Spine has been harmed and faces additional harm.

## COUNT IV – VIOLATION OF COLORADO UNIFORM TRADE SECRETS ACT

95.     Zimmer Spine incorporates the allegations in paragraphs 1-94 as if fully restated here.

96.     Zimmer Spine's confidential information, including its customer information is a trade secret under the CUTSA.

97.     This information has independent economic value as it greatly increases Zimmer Spine's efficiency in sales and distribution, enabling it to learn from past deals and increase sales in the future.

98.     Zimmer Spine devoted a substantial amount of time, effort and expense to develop its confidential information, including its customer information.  This information is not readily available from any one public source.

99.     Zimmer Spine used reasonable efforts to maintain the secrecy and confidentiality of its confidential information, including its customer information, by, for example, limiting access to such information and by contracting for the return of such information upon termination of the Sales Representative Agreement.

100.    Biomet Spine and Veri have misappropriated and/or threatened to misappropriate Zimmer Spine's trade secrets by using them to solicit Zimmer Spine's customers for Biomet Spine without Zimmer Spine's express or implied consent.

101.    As a direct and proximate result of Biomet Spine's and Veri's conduct, Zimmer Spine has been harmed and faces additional harm.

## COUNT V – UNJUST ENRICHMENT

102.    Zimmer Spine incorporates the allegations in paragraphs 1-101 as if fully restated here.

103.    Upon information and belief, Biomet Spine and Veri have reaped financial benefits as a result of their unlawful conduct described herein.

104.     Permitting Biomet Spine and Veri to profit from such unlawful conduct would be unjust and inequitable.

105.     Accordingly, Biomet Spine and Veri should be ordered to disgorge any monies accruing to them as a result of their unlawful conduct.

## COUNT VI – EXEMPLARY DAMAGES

106.     Zimmer Spine incorporates the allegations in paragraphs 1-105 as if fully restated here.

107.     Biomet Spine's and Veri's conduct against the interests of Zimmer Spine has been oppressive and undertaken with the intent of subjecting Zimmer Spine to cruel and unjust hardship.

108.     Biomet Spine's and Veri's conduct against the interests of Zimmer Spine has been undertaken with the specific intent of causing Zimmer Spine tangible and intangible harm.

109.     Biomet Spine's conduct against the interests of Zimmer Spine has been fraudulent.

110.     Biomet Spine's and Veri's conduct against the interests of Zimmer Spine has been malicious.

111.     Biomet Spine's and Veri's conduct against the interests of Zimmer Spine has been willful and wanton.

112.     Biomet Spine's and Veri's conduct against the interests of Zimmer Spine warrants and justifies an award of exemplary damages.

CLI-1863298v1

## JURY TRIAL DEMANDED

113.    Plaintiff Zimmer Spine respectfully requests a jury trial on all facts and claims so triable.

WHEREFORE, Zimmer Spine prays that the Court enter judgment in its favor and award the following relief:

(a)    compensatory damages in an amount to be proven at trial;

(b)    disgorgement of any monies received by Biomet Spine and Veri by virtue of their unlawful conduct described herein, including but not limited to the imposition of a reasonable royalty for its unauthorized use of Zimmer Spine's trade secrets;

(c)    an award of exemplary and/or punitive damages under the common law and statutes applicable to plaintiff's claims;

(d)    an award of attorneys' fees and costs; and

(d)    such other relief as the Court deems just and appropriate.


DATED:  December 22, 2010.              Respectfully submitted,


*s/  Bruce A. Featherstone*
Bruce A. Featherstone
**FEATHERSTONE PETRIE DESISTO LLP**
600 Seventeenth Street, Suite 2400-S
Denver, Colorado  80202-5424
Telephone:  303-626-7100
Facsimile:  303-626-7101
bfeatherstone@featherstonelaw.com

*Attorneys for Plaintiff*