IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-03112-LTB-CBS

ZIMMER SPINE, INC.,

        Plaintiff,

v.

EBI, LLC (d/b/a Biomet Spine, Biomet Trauma, Biomet Bracing, and Biomet Osteobiologics),
    and ADAM VERI,

        Defendants.
_____

ORDER
_____

This matter is before me a Motion to Dismiss filed by Defendants, EBI, LLC ("Biomet") and Adam Veri ("Veri"), seeking dismissal of four of the claims for relief asserted against them by Plaintiff, Zimmer Spine Inc. ("Zimmer Spine") in its amended complaint. [**Doc # 13**] Specifically, Defendants ask that I dismiss the following claims asserted by Zimmer Spine for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6): Intentional Interference With Business Relationships by both Defendants and Biomet Spine individually [Counts II & III]; Violation[s] of Colorado Uniform Trade Secrets Act [Count V]; and Unjust Enrichment [Count VI]. Oral arguments would not materially assist me in my determination. After consideration of the parties' arguments, and for the reason stated, I GRANT IN PART and DENY IN PART the motion.

**I. Facts**

The underlying facts of this case, as taken from the amended Complaint [Doc #10], are as follows. Zimmer Spine is in the business of developing, manufacturing, and selling spine care

medical products and related services. It contracts with independent distributors, or "sales representatives," who, in turn, employ sales personnel to sell Zimmer Spine's products to physicians and hospitals. In an agreement effective January 1, 2009, Pro Medical, LLC, and its owner, Frank Wainright, agreed to serve as Zimmer Spine's sales representative in the territory of Colorado, Montana, and Wyoming, which was later expanded to include some or all of Nevada and Utah. Defendant Adam Veri was a sales manager with Pro Medical, who sold Zimmer Spine products.

In the Fall of 2010, Veri began soliciting Pro Medical sales personnel who were representing Zimmer Spine, to switch and begin working for Defendant Biomet, a direct competitor of Zimmer Spine. In so doing, Veri asked the sales personnel what business they thought they could "steal away" from Zimmer Spine and bring with them to Biomet. During this time, on September 13, 2010, Veri formed his own company, GIO Medical.

On November 18, 2010, Wainright faxed a letter to Zimmer Spine claiming to terminate their agreement to be Zimmer Spine's sales representatives. Zimmer Spine asserts that this termination was wrongful. On the same day, Wainright called an "emergency" meeting of Pro Medical's sales personnel, and announced that Pro Medical was terminating its relationship with Zimmer Spine. Following this announcement, it is alleged that Veri spoke and gave an approximately hour-long PowerPoint presentation about Biomet, and then conducted a "product fair" of Biomet's products, to Pro Medical's sales personnel. He then offered employment contracts with GIO Medical to the individual sales personnel to sell Biomet products "including to their Zimmer Spine customers." These employment offers included increased commission rates and up-front signing bonuses.

In response, Zimmer Spine representatives traveled to Colorado to meet with the Pro Medical sales personnel to offer them direct employment with Zimmer Spine. Zimmer Spine asserts that although it has succeeded in signing many of the sales personnel, "it has done so at tremendous cost and after incurring significant damages, including signing bonuses and the equivalent of higher guaranteed commission rates." In addition, Zimmer Spine contends that Biomet and Veri have repeatedly gone back to the sales personnel and steadily increased their employment offers.

In its amended complaint, Zimmer Spine alleges that Defendants "undertook a calculated scheme to interfere with [its sales agreement with Pro Medical and Wainright] to deprive Zimmer Spine of the benefits of the unique skills and abilities it had contracted for, and to steal the business, customer relationships, and goodwill that Zimmer Spine had built through Pro Medical and Wainright." [Doc # 10, ¶ 35] Zimmer Spine claims that Defendants have: intentionally interfered with contractual obligations; intentionally interfered with business relationships (both Defendants and Biomet acting individually); engaged in civil conspiracy; violated the Colorado Uniform Trade Secrets Act; and have been unjustly enriched. In this motion, Defendants seek dismissal of four of the claims brought by Zimmer Spine against them pursuant to Fed. R. Civ. P. 12(b)(6).

My jurisdiction over these state law claims is based on diversity of citizenship. As a federal court sitting in diversity jurisdiction, my role is to ascertain and apply the proper state law, here that of Colorado, with the goal of insuring that the result obtained is the one that would have been reached in the state courts. *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir. 1995).

## II. Standard of Review

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007); *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). A complaint will survive dismissal if it alleges a plausible claim for relief – that is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. Rather, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1192 (10th Cir. 2009)(*citing Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

## III. Intentional Interference With Business Relationships [Counts II & III]

Defendants first assert that Zimmer Spine's claims against them for Intentional Interference With Business Relationships fail, as a matter of law, because the amended complaint does not allege sufficient facts showing either: 1) the existence of a business relationship between Pro Medical's sales representatives and Zimmer Spine, or 2) that Defendants interfered with any such relationship using "wrongful means."

To state a claim for intentional interference with contractual relations or prospective business advantage, a plaintiff must allege facts in support of the following elements: (1) the existence of a valid contract or reasonable prospect of having a business relationship; (2) that the

defendant knew of the contract or prospective relationship; (3) the defendant intended to induce a breach of the contract or interfere with the prospective business relationship; (4) defendants engaged in conduct which produced a breach of contract or prevented the plaintiff from acquiring or continuing a prospective business relationship; (5) the interference was improper; and (6) the plaintiff suffered damages. *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984); *see also Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995). Interference with contractual relations and interference with prospective business relations requires identical elements, with the exception that an existing contract need not be alleged for interference with prospective business relations. Rather, a plaintiff "must show that there was a reasonable likelihood that a contract would have resulted but for the wrongful interference." *Campfield v. State Farm Mut. Auto. Ins. Co.,* 532 F.3d 1111, 1122 (10th Cir. 2008)(*quoting Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)).

**A. Established and/or Prospective Business Relationship**

Zimmer Spine is asserting a claim against both Defendants for interference with its relationship with the sales personnel at Pro Medical who were selling Zimmer Spine's products (Count II). In addition, it is asserting a claim against Biomet alone for interference with Zimmer Spine's relationship with Defendant Veri, as a sales person who sold Zimmer Spine products at Pro Medical (Count III). Zimmer Spine argues that it has alleged it has both an established and prospective business relationship with the sales personnel, including Veri. Specifically, the amended complaint alleges that Zimmer Spine had a "prospective contractual relationship, independently enforceable third-party beneficiary rights, or prospective independently enforceable third-party beneficiary rights with Pro Medical sales personnel." [¶ 96]

5

Zimmer Spine asserts that its amended complaint alleges a relationship existed between itself and the sale personnel which arose out of the sales agreement with Pro Medical/Wainright. That alleged relationship was created as a result of the fact that the sales personnel offered, promoted and sold Zimmer Spine's products and services, they were entrusted with its confidential trade secret information, and they were responsible for protecting and enhancing its reputation and goodwill with its customers. [¶¶ 3, 4, 19-21, 24] Because of the close nature of the established relationship, and the significant sales and customer service responsibilities extended to Pro Medical's sales personnel, Zimmer Spine argues that it included provisions in the sales agreement that "established a continuing, prospective business relationship with Pro Medical's sales personnel." Zimmer Spine specifically refers to Sections 10 and 32 of the sales agreement. Section 10 required Pro Medical to cause each of its sales personnel to execute covenants against disclosure of confidential information, competition against Zimmer Spine, and solicitation of its customers. Section 32 required Pro Medical to enforce its restrictive covenants against its sales personnel for the benefit of Zimmer Spine upon termination of the sales agreement. [¶ 27]

I first reject Zimmer Spine's argument to the extent that they argue that they had an *established* business relationship with the sales personnel based on Zimmer Spine's and Pro Medical/Wainright's sales agreement. Contrary to Zimmer Spine's assertion, Pro Medical's obligations under the sales agreement pertaining to its employees cannot support a business relationship between Zimmer Spine and those employees. *See Campfield v. State Farm, supra,* 532 F.3d at 1122 (a "claim of tortious interference with current business relations requires [the plaintiff] to show: (1) he had a contract with a third party ..."). I likewise reject Zimmer Spine's

6

argument that it had an established relationship grounded in the "close nature of the established relationship and the significant sales and customer service responsibilities extended to Pro Medical's sales personnel." Because there is no contractual relationship between Zimmer Spine and the sales personnel at Pro Medical, I agree with Defendants that Zimmer Spine has failed to allege an interference claim based on an established or current business relationship.

To the extent that Zimmer Spine alleges Sections 10 and 32 "conferred express, independently enforceable third-party beneficiary rights upon Zimmer Spine" sufficient to infer a business relationship with the sales personnel, I again disagree. Zimmer Spine has failed to provide me with any legal authority that supports the proposition that the restrictive convents in its agreement with Pro Medical created a third-party right that, in turn, supports an inference of an established business relationship between Zimmer Spine and the sales personnel at Pro Medical.

The question that remains, then, is whether Zimmer Spine has asserted a *prospective* business relationship with the sales personnel at Pro Medical, by alleging facts to support a "reasonable likelihood that a contract would have resulted but for the wrongful interference." *See Campfield v. State Farm, supra,* 532 F.3d at 1122. Defendants argue that Zimmer Spine has failed to allege facts supporting a reasonable likelihood, but rather have only alleged a "mere hope" of such future relationship. *See Klein v. Grynberg*, *supra*, 44 F.3d at 1506 (to allege "a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope")(citations omitted).

The amended complaint alleges that Section of 32 of the sales agreement obligated Pro Medical/Wainright to "take all such actions and sign all such documents as are necessary to facilitate the transition of" Pro Medical's business for Zimmer Spine in the event the agreement

7

was terminated [¶ 78], and, if the sales personnel chose not to enter into a relationship with Zimmer Spine, Wainright was required to enforce the non-compete agreements against the sales personnel to the extent permitted by law under Section 10. [¶ 96] Defendants maintain that the contractual provisions at issue obligated Pro Medical/Wainright, but that Zimmer Spine has not shown that such obligations create a protectable prospective relationship between them and the sales personnel who "were total strangers" to the sales agreement. Defendants also refer me to the language in Section 10 – which provides that Wainright had sole control and responsibility for "the hiring and discharge" of it employees – and which Defendants argue indicates Zimmer Spine's disclaimer of any interest in or relationship with the sales personnel. Finally, Defendants note that the sales personnel at issue sold products for various other manufacturers.

 I conclude that Zimmer Spine has failed to allege sufficient facts to withstand dismissal for failure to state a claim related to a prospective business relationship with the Pro Medical sales personnel that sold its products. The fact that Pro Medical/Wainright agreed to provide Zimmer Spine access to the employees that sold its products and, in addition, enforce non-compete clauses against them in the event of termination of the sales agreement, is only evidence to support the inference of a possibility or mere hope, not a reasonable likelihood, that a future contract might have resulted between Zimmer Spine and the individual sales personnel. The provisions in the sale agreement – which only obligate Zimmer Spine and Pro Medical/Wainright – are not sufficient to support a reasonable liklihood of a future relationship and, as such, fails to state a plausible claim for relief. *See Hertz v. Luzenac Group*, 576 F.3d 1103, 1119 (10th Cir. 2009)(upholding a ruling that the plaintiff only demonstrated a "mere hope" of engaging in any future business deals with a third party when it expressed only an interest in the plaintiff's

business, and indicated that it would consider the invention in several months); *Klein v. Grynberg, supra,* 44 F.3d at 1506 (upholding a finding that the prospective relationships alleged were too speculative when there was no evidence that the plaintiff had an ongoing relationship with any of the investors, beyond one meeting each, or that any of the prospective investors had the intent to finance his invention).

Therefore, I reject Zimmer Spine's argument that the amended complaint alleges facts sufficient to support either an established business relationship with the sales personnel who were selling Zimmer Spine's products at Pro Medical (including Defendant Veri) – based on either an actual contract or a third-party beneficiary relationship – or the reasonable likelihood of a prospective business relationship with that personnel.

**B. Wrongful Means**

I also conclude that even if Zimmer Spine alleged sufficient facts to support the existence of a prospective business relationship, the amended complaint fails on its face to allege that Defendants used "wrongful means" to improperly interfere with that relationship sufficient to overcome the competitor's privilege defense.

The competitor's privilege dictates that a "plaintiff cannot sue one of its competitors for intentional interference in prospective economic advantage." *Occusafe v. EG&G Rocky Flats, supra*, 54 F.3d at 622-23 (*citing Memorial Gardens v. Olympian Sales, supra,* 690 P.2d at 210-11). Specifically, the competitor's privilege provides that a defendant does not engage in improper conduct, so as to be liable for intentional interference, if: "(1) it concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's

purpose is, at least in part, to advance its own interest." *Nobody in Particular Presents, Inc. v. Clear Channel Communs.,Inc.*, 311 F. Supp.2d 1048, 1115 (D. Colo. 2004)(*citing Amoco Oil v. Ervin*, *supra*, 908 P.2d at 501; Restatement (Second) of Torts § 768).

As an initial matter, I agree with Zimmer Spine that it appears that "[u]nder Colorado law, the competitor's privilege is not an element of plaintiff's claim, but an affirmative defense that must be asserted and proven by the defendant." *Beeler Properties LLC v. Lowe Enterprises Residential Investors LLC,* 2007 WL 1059034, 4 (D.Colo. April 5, 2007)(*citing* C.J.I. 24:6, *Interference With Contracts – Affirmative Defense - Privilege - When Existent , When Lost*, Notes on Use No. 5, which describes the competitor's privilege as set forth in Restatement (Second) of Torts §768 as an affirmative defense). However, dismissing a claim under Fed. R. Civ. P. 12(b)(6) on the basis of an affirmative defense is proper where that defense is clear from the face of the complaint. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1310 n .3 (10th Cir. 1999) ("Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period"), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also* 5A Charles Wright & Arthur Miller, Federal Practice and Procedure: Civil 2d §1357 at 348-49 (1990).

Because Zimmer Spine avers in its amended complaint that Defendants are its competitors, and they do not make allegations that Defendants employed "wrongful means," Defendants assert that dismissal is proper as the competitor's privilege is clearly applicable from the face of the complaint. In response, Zimmer Spine does not contest that its position is that Defendants are competitors. [¶ 6] However, it contends that it has properly alleged that

Defendants employed wrongful means in its interference that, in turn, makes the competitor's privilege inapplicable.

Comment e of §768 of the Restatement provides that:

*Means of inducement.* If the actor employs wrongful means, he is not justified under the rule stated in this Section. The predatory means discussed in § 767, Comment c, physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section.

*See also Amoco Oil v. Ervin*, *supra*, 908 P.2d at 502. Defendants argue that Zimmer Spine had not alleged that they employed wrongful means in that the amended complaint does not assert factual allegations of "physical violence, fraud, civil suits and criminal prosecutions." Zimmer Spine, in response, argues that although it did not allege the means specified in Comment e, it did allege wrongful means in the form of intentional interference with the sale agreement and misappropriation of trade secrets.

As an initial matter, to the extent Defendants are arguing that "wrongful means" are limited to the those specifically listed in Comment e of Restatement §768 – "physical violence, fraud, civil suits and criminal prosecutions" – I disagree with such a narrow reading. The Restatement itself does not provide limiting language and, moreover, Colorado case law does not supports a reading that such acts constitute the only types of wrongful means. In *Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1199 (Colo. App. 2009), a division of the Colorado Court of Appeals upheld a jury instruction that clearly indicated that "physical violence, threats of criminal prosecution, or threats of civil suit" served merely as examples, and were thus not the only wrongful means at issue. The Court held that the torts of conversion and breach of fiduciary duty constituted wrongful means of inducement as they were: independently actionable; capable of forming the basis of liability for the actor; or wrongful by reason of a recognized rule of common

law or deceit or misrepresentation. *Id.* at 1200 (*quoting Amoco Oil v. Ervin, supra*, 908 P.2d at 502 n. 6; *DP-Tek, Inc. v. AT & T Global Information Solutions Co.,* 100 F.3d 828, 833-35 (10th Cir. 1996)).

Zimmer Spine argues that it has alleged independently actionable conduct of wrongful means – first, that Defendants improperly interfered with Pro Medical/Wainright's performance of its obligations under the sales agreement and, in addition, that Defendants misappropriated Zimmer Spine's trade secrets. Specifically, the amended complaint alleges that Defendants "employed wrongful means to cause the Pro Medical sales personnel to terminate their actual or prospective relationships with Zimmer Spine . . . including but not limited to [Defendant's] intentional interference with Pro Medical's and Wainright's performance under the [sales] agreement causing them to breach the agreement and [Defendants'] misappropriation of Zimmer Spine's trade secrets." [¶ ¶ 101, 111]

In response, Defendants assert that the conduct alleged does not make up "the means" by which Defendants tortiously interfered with the Zimmer Spine's prospective relationship with the sales personnel, but rather "merely facilitated" that interference. As such, the alleged conduct does not constitute "wrongful means" as set forth in Restatement §768(1). In making this argument, Defendants rely on *Powell Products, Inc. v. Marks,* 948 F.Supp.1469, 1479 (D. Colo. 1996), which ruled on summary judgment that even if the defendant created a product via "wrongful means" – namely, improper use of trade secrets – it did not engage in wrongful means constituting inducement in the context of an interference with a business relationship claim.

I agree with Defendants that the "wrongful means" alleged here were not directly related to Defendant's alleged interference with the prospective relationship between Zimmer Spine and

12

the sales personnel. Rather, as in *Powell Products, Inc. v. Marks, supra,* Defendants alleged actions in inducing Pro Medical/Wainright to improperly breach its obligations sales agreement, and in misappropriating Zimmer Spine's trade secrets, constituted the facilitation of the interference with the prospective relationship, not the means by which it was accomplished. I conclude that Zimmer Spine's allegations do not constitute "wrongful means" sufficient to overcome application of the competitor's privilege to dismiss the claim of intentional interference based on the face of the amended complaint. I note that in so finding, I do not reach Defendant's argument that to the extent Zimmer Spine relied on the alleged misappropriation of trade secrets as the "wrongful means," such claim is preempted as duplicative of Zimmer Spine's claims under the Colorado Uniform Trade Secrets Act. *See* C.R.S §7-74-108.

Therefore, I conclude that Zimmer Spine's claims of interference with its business relationship with the sales personnel at Pro Medical who were selling Zimmer Spine's products, against both Defendants and against Biomet alone, must be dismissed for failure to state a claim on the grounds that amended complaint fails to allege sufficient facts to support either an established or prospective business relationship between Zimmer Spine and the sales personnel, including Veri. Additionally, even if a prospective relationship was adequately alleged, the amended complaint on its face fails to set forth allegations of "wrongful means" to support a claim of interfering with that relationship sufficient to overcome application of the competitor's privilege. Therefore, Counts II and III of Zimmer Spine's amended complaint are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### IV. Violation[s] of Colorado Uniform Trade Secrets Act [Count V]

Defendants next contend that the misappropriation claims alleged against them by Zimmer Spine fails to state a claim under Fed. R. Civ. P. 12(b)(6). Zimmer Spine alleges that Defendants misappropriated trade secrets in violation of the Colorado Uniform Trade Secrets Act, §§ 7-74-101-110, Colo. Rev. Stat. ("UTSA"). Zimmer Spine contends that it has alleged misappropriation pursuant to both § 7-74-102(2)(a) (defining misappropriation as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means") and § 7-74-102(2)(b)(I)(defining misappropriation as the "[disclosure or use of a trade secret of another without express or implied consent by a person who. . . [u]sed improper means to acquire knowledge of the trade secret").

Specifically, Zimmer Spine alleges that Defendants improperly *acquired* its trade secrets from Pro Medical/Wainright "while knowing or having reason to know that the trade secrets were acquired by improper means through breach or inducement of a breach of a duty to maintain secrecy" – in violation of §7-74-102(2)(a). [¶ 28] In support of this claim, Zimmer Spine asserts that Pro Medical/Wainright breached Section 24 of the sales agreement – which obligated them to not reveal any of Zimmer Spine's "Confidential Information" – "by revealing, reporting, disclosing, divulging, communicating, or using, for the benefit of themselves and [Defendants]" various types of Zimmer Spine information. [¶ 125] As an example, Zimmer Spine alleges that Defendants "used confidential organizational information from Zimmer Spine to make employment offers to and solicit Pro Medical's Zimmer Spine sales personnel." [¶ 125] It also alleges that, upon information and belief, "Wainright is using Zimmer Spine's confidential customer information to distribute Biomet Spine products in Pro Medical and Wainright's former

territory." [¶ 125] The amended complaint also alleges that Defendants have improperly *used* Zimmer Spine's trade secrets "by soliciting and continuing to solicit Pro Medical's . . . sales personnel and . . . customers" for their own benefit – in violation of §7-74-102(2)(b)(1). [¶ 130]

In this motion, Defendants first maintain that Zimmer Spine does not (and cannot) claim that Defendants themselves misappropriated the information, but rather that Wainright, a non-party, allegedly revealed, disclosed, or used the trade secret information in purported breach of his contractual obligations with Zimmer Spine. Defendants assert that the only information the amended complaint directly alleges was improperly obtained and/or used by them is "confidential organizational information" – *i.e.* "personnel and salary data" – which Zimmer Spine avers was acquired and used by Defendants "to make employment offers to and solicit" the sales personnel. [¶ 125] Defendants argue that such information does not constitute a trade secret because: 1) personnel and salary data relating to *Wainright's* sales representatives cannot constitute *Zimmer Spine's* trade secrets, especially when Zimmer Spine expressly disclaimed control or responsibility for the "hiring and discharging" of the sales personnel in Section 10 of the sales agreement; and 2) personnel and salary data for the sales representative does not constitute a trade secret under the Colorado UTSA. *See* Restatement (First) of Torts § 757 Cmt. b (providing that a trade secret "is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract or the salary of certain employees").

Zimmer Spine does not directly challenge Defendants' assertion that the personnel/organizational information at issue does not constitute a trade secret. Instead, Zimmer Spine argues that its amended complaint asserts numerous other trade secrets Defendants

15

improperly acquired and/or used. Zimmer Spine refers me to the allegation in its complaint that Pro Medical/Wainright revealed the following types of Zimmer Spine information to Defendants: "marketing, sales, and advertising information, including lists of actual or potential customers, customers preference data, and confidential customer information including identification of purchasing personnel, account status, need and ability to pay; organizational information, including personnel and salary data; financial information, including product costs and pricing policies; technical information, including product specifications, designs, techniques, and new products; and other confidential data of Zimmer Spine." [¶ 125] Zimmer Spine further argues that the amended complaint alleges that Defendants both acquired and used those trade secrets, while knowing or having reason to know that the trade secrets were acquired by improper means and without Zimmer Spine's express or implied consent. [¶¶ 129 & 130]

While I agree with Defendants that these generalized allegations offer "little by way of substance," I find that the amended complaint, when viewed in the whole, adequately alleges that Defendants have acquired Zimmer Spine's trade secrets (such as marketing and sales information, customer lists and data, financial information, and technical information) when they knew or had reason to know that the information was acquired by improper means (breach or inducement of a breach of a duty to maintain secrecy) – in violation of § 7-74-102(2)(a) – and/or they used this trade secret information, without express or implied consent, obtained by improper means – in violation of § 7-74-102(2)(b)(I). I conclude that the factual allegations and related inferences alleged are sufficient to raise a plausible claim that Defendants improperly used or acquired Zimmer Spine's trade secrets. In so doing, I find that the general information Zimmer Spine claims was improperly acquired and/or used is sufficiently set forth in the amended

16

complaint to raise a right to relief above the speculative level precluding dismissal of Count V of Zimmer Spine's amended complaint.

## V. Unjust Enrichment [Count VI]

Finally, Defendants contend that Zimmer Spine has failed to state a claim against them for unjust enrichment. To state a claim for unjust enrichment under Colorado law, a plaintiff must allege that (1) at their expense, (2) defendants received a benefit, (3) under circumstances that would make it unjust for them not to make restitution. *Van Zanen v. Qwest Wireless, LLC*, 550 F. Supp. 2d 1261, 1266 (D. Colo. 2007)(*citing DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998)). Zimmer Spine asserts that Defendants have been unjustly enriched by their actions.

The amended complaint alleges that, upon Zimmer Spine's information and belief, Defendants "have reaped financial benefits at Zimmer Spine's expense as a result of their unlawful conduct described herein, including but not limited to conspiring to cause Pro Medical and Wainright to breach their obligations under the [sales] agreement, interfering with the business relationships between Zimmer Spine and the Pro Medical sales personnel, and misappropriating Zimmer Spine's trade secrets." [¶ 134] The complaint next asserts that "[p]ermitting [Defendants] to profit from such unlawful conduct would be unjust and inequitable" and, accordingly, Defendants "should be ordered to disgorge any monies accruing to them as a result of their unlawful conduct." [¶¶ 135 & 136]

Defendants argue that this claim should be dismissed for failure to state a claim in that it "makes only the barest formulaic recitation of the elements of an unjust enrichment claim." Specifically, they assert that the amended complaint fails to identify any benefit Defendants

17

received, or explain how this unidentified benefit came at Zimmer Spines's expense. In response, Zimmer Spine argues that its unjust enrichment claim "incorporates all of the allegations in the previous paragraphs." [¶ 133] Those allegation include that Defendants interfered with Wainright/Pro Medical's contractual obligations to Zimmer Spine – in that Wainright signed an agreement with Biomet Spine and has begun to distribute Biomet products in parts of his former Zimmer Spine territory – and that Wainright began his career with Biomet Spine with the benefit of competitively sensitive and confidential Zimmer Spine information. [¶¶ 20, 56 & 80] In addition to losing the benefits of its relationship with Pro Medical, the amended complaint also asserts that Zimmer Spine incurred significant expenses to preserve its presence in the relevant territory and to maintain its relationships with Pro Medical's sales personnel and their customers. [¶¶ 63-66]

Although the amended complaint is again sparse in specific factual allegations in support of its claim for unjust enrichment, I conclude that it is sufficient – when the allegations are viewed as true and in favor of Zimmer Spine – to allege a plausible claim for relief. Thus, I conclude that Zimmer Spine has adequately pled a cognizable unjust enrichment claim precluding dismissal of Count VI of its amended complaint.

## VI. Conclusion

ACCORDINGLY, I GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss, in that: (1) I GRANT the motion seeking dismissal for failure to state a claim of Plaintiff's claims against Defendants for Intentional Interference With Business Relationships and, as such, I DISMISS Counts II & II of the Amended Complaint [Doc #10] pursuant to Fed. R. Civ. P. 12(b)(6); and (2) I DENY the remaining relief requested. [**Doc # 13**]

In addition, based on the foregoing ruling, I DENY AS MOOT Defendants' Motion to Dismiss, filed on February 14, 2011, seeking dismissal of Plaintiff's previously-filed Complaint. [**Doc # 7**]

Dated: September __14__, 2011, in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE